Robert Earl Booth,
                    Plaintiff,

                                        Case No. 15-C-1253

    -VS-

L.Doehling-Health Care Manager,
Sharon Meerchen-R.N.,C.Barter-R.N.,
S.Klenke-R.N.,Susan Peters-R.N.,
Wanda Yeska-Food Supervisor,Amy
Wilson-Kitchen Administrator,C/o
Hedge,C/o Grover,Sgt.Roberts,Sgt.
Murphy,Brian Miller-Unit Manager,
Kreiger-Business Officer,Michelle
Smith-ICE,K.Souzek-Human Resource
Office,Steve Schueler-Security
Director,Michael Meisner-Warden,

                    Defendant(s).

JOHN W. SANFILIPPO
CLERK
2015 OCT 19 P 3: 02
U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

## CIVIL RIGHTS COMPLAINT

### Introduction

    The Plaintiff in the above entitled action in his Natural
person capacity commence this Civil Action against the Defendants
in their individual,Personal and Official capacities for acts and
Omissions consistant with Title 42 § U.S.C. 1983,contrary to
their Ministerial duties to their office and employment in
violation of the 1st, 5th, 6th, 8th and 14th Amendments to the
United States Constitution, while acting under the color of law,
and liable under state law via the Warden Official Oath and Bond
of Office pursuant to § 302.03 (1)(2) Wis. Stats., and as a
result of their actions and inactions the plaintiff's person and
property was injuried thereby; to which the plaintiff seeks,
declaratory, Injunctive, Compensatory and Punitive Damages.

### 1.                    Jurisdiction

    This Court pursuant to Title 28 § U.S.C. 1331 (1), & 1343
(a)(2)(3); Article 7 § 8 Wisconsin Constitution in issuing a

42 § U.S.C. 1983, with Article 3 § 2, Cl.# 1 U.S. Comstitution,
the Court shall exercise it's Judicial Powers over case's arising
under the Constitution and laws of this land, affecting person's
and things. This Court as jurisdiction over the Plaintiff's State
law Tort Claims under Title 28 § U.S.C. 1367, and Supplemental
Jurisdiction thereover.

## 2. Notice of Claim

A NOtice of Claim, was filed On 4-16-15, by Certified
Mail and Acknowledge being received On 4-21-15, from Attorney
General Office.

## 3. Exhaustion of Administrative Remedies

The Plaintiff has exhausted all his Administrative
Remedies; by Attempting to Mitigate/Resolve these actions and
inactions of the Defendant's through the Redgranite Correctional
Institution's Chain of Command Policy and through the Inmate
Review System (Hereinafter as "ICRS"), by submitting the DOC
4. Complaint RGCI-2015-4022, On 3-2-15, and which the Institution
Complaint Examiner, Michelle Smith, recommended the complaint to
5. be Dismissed; which the Review Authority on 3-18-15, Dismissed
DOC Complaint #RGCI-2015-4022, and Plaintiff Appealed to
6. Corrections Complaint Examiner (Hereinafter as "CCE") On 3-26-15,
7  and On 5-7-15, the CCE - Ana Boatwright, recommended the
7. Complaint be dismissed, and On 4-19-15, the Secretary of DOC,
designee - Cindy O'Donnell, accepted the the CCE, recommendation
an dismissed the DOC Complaint#RGCI-2015-4022, "Deliberate
indifference regarding work related injury", COMPLAINT.
8. On 3-26-15, Plaintiff submitted DOC Complaint #RGCI-2015-5822,
concerning the arbitrary lost/removal from his job due to work
9. related injury", and On 4-6-15, Inmate Complaint Examiner, (Here-
inafter as "ICE") Michelle Smith, Recommended the complaint to be
dismissed alleging that documentation does not support Plaintiff,

assertion that he is unable to work due to work related injury
10. that occurred on 8-31-14, and that there is no requirement to
continue to compensate him at his previous rate of earning given
11. these circumstances;  and On 4-6-15, the Reviewing Authority,
Michael Meisner, Dismissed, DOC Complaint#RGCI-2015-5822, and On
4-7-15, Plaintiff submitted his Appeal to CCE, and On 5-9-15,
Submitted an Amended Complaint Appeal to CCE, and On 5-22-15, the
CCE - Ana Boatwright, recommended DOC Complaint to be Dismissed,
alleging that the Institution's decision reasonably and
Appropriately addressed the issue raised by Plaintiff; On 5-28-15
the Secretary of DOC, designee Cindy O'Donnell, accepted CCE's,
recommendation and dismissed DOC Complaint #RGCI-2015-5822.
On 4-10-15, the Plaintiff submitted his DOC Complaint#RGCI-2015-
6707, concerning the incompetency of ICE, in investigating his
previous complaint, and On 4-24-15, ICE - Ashley Freitag,
Rejected the Plaintiff's complaint alleging that it was an Appeal
amounted to an Appeal of RGCI-2015-5822; an is not raised in the
proper forum and would be contrary to DOC 310.11 (5)(g) Wis. Adm.
code and On 5-1-15, the Plaintiff Appealed the ICE's Rejection of
his complaint to the Warden/Appropriate Reviewing Authority and
On 5-8-15, the Reviewing Authority - Michael Meisner, Stated that
the complaint was Appropriately rejected by the ICE in accordance
with DOC 310.11 (5).

On 5-15-15, the Plaintiff submitted DOC Complaint#
RGCI-2015-9010, alleging that staff failed to complete an
Accident Report, concerning his work related injury and that he
was entitled to receive back pay from 2-28-15 until 5-15-15; and
the ICE - Michelle Smith, Rejected his complaint and On 6-2-15,
the Plaintiff Appealed the ICE, rejection of his complaint and On
6-8-15, the Appropriate Reviewing Authority - Michael Meisner,
stated that the complaint was appropriately rejected by ICE in
accordance with DOC 310.11 (5).

## Plaintiff's

Robert E.Booth#315686, having had his 1st, 4th, 8th

and 14th Amendment rights under U.S. Constitution violated; who
is a Natural born/Flesh & Blood person and Resident of the United
States, residing at Redgranite Correctional Institution, P.o. Box
925, Redgranite, WI.54970; whose mailing address is the same.

## Defendant's

23. Michael Meisner-Warden, responsible for the custody,
person's, belongings and every species of Property and well being
of each inmate,pursuant to § 302.04 Wis. Stats., an liable for
any injuries thereto, under his Official Oath and Official Bond
of Office committed by him or officers or employes's employed by
him in their respective duties and trust pursuant to § 19.01 (3)
Wis. Stats., & § 302.03 (1)(2) Wis. Stats.; is a citizen of the
United States of America, employed by the State of Wisconsin,
Department of Corrections; whose mailing address is: Redgranite
Correctional Institution, P.o. Box 900, Redgranite,WI.54970-0900.

24. Steve Schueler-Security Director, a citizen of the
United States of America, employed by the State of Wisconsin,
Department of Corrections, responsible for the discipline,
welfare, Rroperty and belongings of all inmate, and liable for
any injuries thereto, pursuant to the Official Oath and Official
Bond of the Warden's pursuant to § 19.01 (3) Wis. Stats., whose
mailing address is: Redgranite Correctional Institution, P.o. Box
900, Redgranite,WI.54970;

25. L.Doehling-Health Care Manager, a citizen of the
United States of America, employed by the State of Wisconsin,
Department of Corrections, responsible for the Health, Care, &
Treatment & Welfare of all inmates and liable for any injuries
thereto,pursuant to the U.S. Constitution, Health Laws, and
pursuant to the Official Oath and Official Bond of the Warden's
pursuant to § 19.01 (3) Wis. Stats., whose mailing address is:
Redgranite Correctional Institution, P.o. Box 900, Redgranite,WI.
54970;

26. Sharon Moerchen-Registered Nurse, a citizen of the

United States of America, employed by the State of Wisconsin,
Department of Corrections, responsible for the Health care,
Medical Treatment, & Welfare of all inmates and liable for any
injuries thereto, pursuant to the U.S. Constitution, Health Laws,
and pursuant to the Official Oath and Official Bond of the Warden's
pursuant to § 19.01 (3) Wis. Stats., whose mailing address is:
Redgranite Correctional Institution, P.o. Box 900, Redgranite,WI.
54970;

27. C.Barter-Registered Nurse, a citizen of the United States
of America, employed by the State of Wisconsin, Department of
Corrections, responsible for the safety, Health Care, Health
& Medical Treatment, and Welfare of all inmates and liable for
any injuries thereto, pursuant to the U.S. Constitution, Health
Laws, and pursuant to the Official Oath and Official Bond of the
Warden's, pursuant to § 19.01 (3) Wis. Stats., whose mailing
address is: Redgranite Correctional Institution, P.o. Box 900,
Redgranite,WI.54970;

28. Susan Peters-Registered Nurse, a citizen of the United
States of America, employed by the State of Wisconsin, Department
of Corrections, responsible for the Safety, Health Care, Health &
Medical Treatment, and Welfare of all inmates and liable for any
injuries thereto, pursuant to the U.S. Constitution, Health Laws,
and pursuant to the Official Oath and Official Bond of the Warden's
pursuant to § 19.01 (3) Wis. Stats., whose mailing address is:
Redgranite Correctional Institution, P.o. Box 900, Redgranite,WI.
54970;

29. Wanda Yeska-Food Services Supervisor, a citizen of the
United States of America, employed by the State of Wiscosnin,
Department of Corrections, responsible for the Operation of Food
Servies, for the Saftey, Health and Welfare of all inmates and
liable for any injuries thereto, pursuant to the U.S Constitution,
Health Laws, and pursuant to the Official Oath and Official Bond
of the Warden's, pursuant to § 19.01 (3) Wis. Stats., whose
mailing address is: Redgranite Correctional Institution, P.o. Box
900, Redgranite,WI.54970;

30. Amy Wilson-Kitchen Administrator, a citizen of the United

States of America, employed by the State of Wisconsin, Department
of Corrections, responsible for the Operation of Food Services,
the Safety, Care, and Welfare of all inmates, and liable for any
injuries thereto, pursuant to the U.S. Constitution, Health Laws,
and pursuant to the Official Oath and Official Bond of the Warden's
pursuant to § 19.01 (3) Wis. Stats., whose mailing address is:
Redgranite Correctional Institution, P.o. Box 900, Redgranite,WI.
54970;

31. C/o Hedge, a citizen of the United States of America,
employed by the State of Wisconsin, Department of Corrections,
responsible for the Safety, Health, and welfare of all inmates,
and liable for any injuries thereto, pursuant to the U.S.
Constitution, Health & Safety Laws, and pursuant to the Official
Oath and Official Bond of the Warden's, pursuant to § 19.01 (3)
Wis. Stats., whose mailing address is: Redgranite Correctional
Institution, P.o. Box 900, Redgranite, WI.54970;

32. C/o Grover, a citizen of the United States of America,
employed by the State of Wisconsin, Department of Corrections,
responsible for the Safety, Care, and Welfare of all inmates, and
liable for any injuries thereto, pursuant to the U.S. Constitution
Health & Safety Laws, and pursuant to the Official Oath and Bond
of the Warden's, pursuant to § 19.01 (3) Wis. Stats., whose
mailing address is: Redgranite Correctional Institution, P.o. Box
900, Redgranite,WI.54970;

33. Sgt.Roberts, a citizen of the United States of
America, employed by the State of Wisconsin, Department of
Corrections, responsible for the Safety, Care, and Welfare of all
inmates, and liable for any injuries thereto, pursuant to the
U.S. Constitution, Health & Safety Laws, and pursuant to the
Official Oath and Bond of the Warden's, pursuant to § 19.01 (3)
Wis. Stats., whose mailing address is: Redgranite Correctional
Institution, P.o. Box 900, Redgranite,WI.54970;

34. Sgt,Murphy, a citizen of the United States of America,
employed by the State of Wisconsin, Department of Corrections,
responsible for the Safety, Care and Welfare of all inmates, and
liable for any injuries thereto, pursuant to the U.S. Constitution

Health & Safety Laws, and pursuant to the Official Oath and Bond
of the Warden's, pursuant to § 19.01 (3) Wis. Stats., whose
mailing address is: Redgranite Correctional Institution, P.o. Box
900, Redgranite, WI.54970;

35.   Brian Miller-Unit Mananger, a citizen of the United
States of America, employed by the State of Wisconsin, Department
of Corrections, responsible for the Safety, Care and Welfare of
all inmates, and liable for any injuries thereto, pursuant to the
U.S. Constitution, Health & Safety Laws, and pursuant to the
Official Oath and Bond of the Warden's, pursuant to § 19.01 (3)
Wis. Stats., whose mailing address is: Redgranite Correctional
Institution, P.o. Box 900, Redgranite, WI.54970;

36.   Kraimer-Business Officer, a citizen of the United
States of America, employed by the State of Wisconsin, Department
of Corrections, responsible for the Safety, Care and Welfare of
all inmates, and liable for any injuries thereto, pursuant to the
U.S. Constitution, Health & Safety Laws, and pursuant to the
Official Oath and Bond of the Warden's, pursuant to § 19.01 (3)
Wis. Stats., whose mailing address is: Redgranite Correctional
Institution, P.o. Box 900, REdgranite,WI.54970;

37.   Michelle Smith, a citizen of the United States of
America, employed by the State of Wisconsin, Department of
Corrections, responsible for the Safety, Care and Welfare of all
inmates, and liable for any injuries thereto, pursuant to the
U.S. Constitution, Health & Safety Laws, Wisconsin Administrative
Codes, Statutes and Inmate complaint Review System, and the
Official Oath and Bond of the Warden's, pursuant to § 19.01 (3)
Wis. Stats., whose mailing address is: Redgranite Correctional
Institution, P.o. Box 900, Redgranite, WI.54970;

38. K.Seusek-Human Resources, a citizen of the United
States of America, employed by the State of Wisconsin, Department
of Corrections, responsible for the Safety, Care, Records,
Information, & Welfare of all inmates, and liable for any
injuries thereto, pursuant to the U.S. Constitution, Wisconsin
Laws, Codes, Regulations, and the Official Oath and Bond of the
Warden's, pursuant to § 19.01 (3) Wis. Stats., whose address is:
Redgranite Correctional Institution, P.o. Box 900, Redgranite,

WI.54970;

## Trial By Jury Demanded

39.    Pursuant to Article 3 § 2, cl.# 1 U.S. Constitution,
Article 1, Sections 5 of Wisconsin Constitution, the Plaintiff
demand a Trial by Jury of (6) and pursuant to this the Court
shall extend it's -(judicial Powers - over all Civil and Criminal
matters arising under the laws of this land and Constitution.

## Statement of Facts

40.    On August 30,2014, the Plaintiff while working in
Redgranite Correctional Institution's Main Kitchen, suffered a
serious injury to his left hand, when the Dishwasher door slammed
down on it. Immediately, the Plaintiff realized that something
was extremely wrong with his left hand, as he felt a sharp and
intense pain in the area of his left thumb and his left hand
began to go numb.

The Plaintiff, immediately informed both Food Services
Supervisor-Wanda Yeska, and C/o Hodge of his injury and that he
was in extreme pain and need immediate medical attention.

Both the Food Services Supervisor-Wanda Yeska, and
C/o Hodge, sent Plaintiff back to his housing Unit, without any
medical care or Treatment; around 6:15 p.m.;

41.    On August 31,2014, around 7:35 a.m., the Plaintiff
showed his swollen hand to C/o Grover, and informed him that he
had received a work related injury the day before and was not
given any medical treatment and has continued to be in extreme
pain. C/o Grover told plaintiff that a Nurse would be making
her rounds soon, and plaintiff informed C/o Grover that he needed
medcial treatment right then. C/o Grover did not contact medical
staff. Three hours went by after Plaintiff had informed C/o
Grover of his injury to his left hand and still no Nurse had made
any round as the plaintiff was informed by C/o Grove.

So the Plaintiff went to the Officer's station and

informed the UNit Sgt.Roberts of his work injury he had
received the day before and showed him how swollen it had become
and that he had not been given any medical treatment for it nor
had he been seen by medical staff and that he still was in
intense pain and needed some medical attention immediately.

Sgt.Roberts, informed plaintiff that a Nurse should be
making rounds soon and the plaintiff could talk with her then or
the plaintiff could fill out a medical form and send it in and
eventually medical staff would call plaintiff over to the Health
Services Unit. (Hereinafter as "HSU")

At 11:40 a.m., On August 31,2014, the Plaintiff went
back to work; and he again saw C/o Hodge, and informed C/o Hodge
that he was still in extreme pain and still had not been given
any medical treatment and that he need some medical attention.
C/o Hodge, informed plaintiff that he would make a few calls and
around 12:10 p.m., C/o Hodge, informed the plaintiff that he
could go to HSU, and around 12:20 p.m., while at HSU, the
plaintiff, was seen by Nurse Triage, who provided the plaintiff
with a Ice bag, Ibuprofen and a thumb splinter and arranged an
appointment for the plaintiff to be seen by the Nurse Practioner.

Only days later On 9-3-14, the Plaintiff was called to
HSU, to be seen by Nurse Susan Peters, who ordered some X-Rays of
plaintiff's left hand to be taken.

On 9-4-14, Plaintiff had X-Rays taken of his left hand
and thumb, which revealed that he suffered a fracture to his left
thumb.

On 9-5-14, Plaintiff was ordered by Nurse, C.Barter,
to return the thumb splinter to HSU, even though his thumb had
not been examined by the Doctor.

On 9-6-14, Plaintiff returned the splinter to HSU, and
was given a 20 day No work Lay-in.

On 9-26-14, Plaintiff was ordered to go back to work
By Nurse's C.Barter and Sharon Moerchen, who neither examined the
plaintiff's hand to determine whether it was well enough to start
back working, when he had not been seen by a Doctor nor Nurse
Practioner.

Prior to and On 10-15-14, the Plaintiff continuously complain to HSU, about his on going pain in his left hand and was told he would have an appointment to see the Doctor, but it never happened.

On 10-26-14, a Appointment was set up for the Plaintiff to be seen.

On 11-10-14, the Plaintiff was called to HSU to see the Nurse Practioner, R.Frank, who gave Plaintiff some cream for his hand and Ordered X-Rays to been taken of his hand.

On 11-13-14, the Plaintiff went to HSU, to have his left hand X-Rayed again and it revealed that Plaintiff indeed had a Fracture to his left hand.

On 1-12-15, Plaintiff was called to HSU, to be seen by Nurse Practioner, R.Frank, who, noted in the record that Plaintiff's hand was still swollen after 5 months, and Recommended that Plaintiff receive an injection.

On 1-22-15, Plaintiff was seen by Nurse Betty, for the injury to his left and she ordered Plainitiff to be placed on No work Restriction, due to the extreme swelling and pain in the Plaintiff's left hand.

On 2-15-15, Plaintiff notice his work Pay had been stopped; He requested to speak to the Kitchen Administrator-Amy Wilson. Who informed the Plaintiff that the reason he was no longer receiving pay was due to the fact that there was No Report written alleging that he had been injuried on the job.

The Plaintiff informed Amy Wilson, that there should have ben a report written by C/o Hodge & Food Services Supervisor - Wanda Yeska, as they were working on the day of the day of the injury occurring. So Ms.Wilson, called C/o Hodge, in an asked him in the presents of the Plaintiff, whether he had written an Accident Report concerning the Plaintiff's injury to left hand and C/o Hodge informed Ms.Wilson that he did not write a Accident Report.

Shortly, thereafter, Ms.Wilson called Food Service Supervisor-Wanda Yeska, in an asked her in the presents of the Plaintiff, whether she had filed a Accident Report concerning the

injury to the plaintiff's left hand on 8-30-14, and Ms.Yeska, informed Ms.Wilson that she did not write a Accident Report.

On 2-16-15, Plaintiff was informed by Nurse Sharon Moerchen, that he was to return to work on 2-17-15, despite the Plaintiff's No Restriction order given by Nurse Betty, on 1-22-15, and despite his not being examined by a doctor or without NUrse Moerchen, conducting an examination of the Plaintiff's left hand, so see if he was fit to begin back working.

On 2-17-15, Plaintiff went back to work in while in extreme pain as ordered by nurse Sharon Moerchen.

ON 2-17-15, the Plaintiff again wrote HSU, Manager, concerning the plaintiff's work related injury to his left hand, requesting medical attention.

On 2-18-15, Nurse Moerchen, arbitrarily responded to plaintiff's request to HSU Manager, L.Doehling, and informed plaintiff that he had been seen by a Nurse Practioner.

Nurse Moerchen, informed plaintiff that she personally stopped or discontinued the No work restriction issued by previous Nurse Betty, because said alleged Nurse Betty, was not authorized to give a work lay-in for that long of a period.

Also On 2-17-15, plaintiff had received a notice from nurse S.Klenke, informing him that his No work restriction was far too long of a period.

On 2-19-15, Nurse S.Klenke again wrote Plaintiff to inform him that his issue had been reffered to Health Care Manager-L.Doehling.

On 2-19-15, the Health Care Manager, wrote Plaintiff, informing him that Nurse Moerchen did not stop his treatment, but she stopped his No work Restriction, because Plaintiff could lose his job after 30 days and she explain that only a Doctor or Nurse Practioner could give a longer restriction than 30 days.

On 2-20-15, Plaintiff again wrote HSU, complaining about the pain & swelling in his left hand, and received no reply back from HSU Staff.

On 2-24-15, Nurse Shew wrote Plaintiff to inform him that an appointment had been scheduled for him.

On 2-24-15, the Plaintiff wrote to HSU regarding all the alleged appointment's he was scheduled for but still was not seen by anyone.

On 2-15-15, Nurse Moerchen, wrote plaintiff to inform him that he would be seen soon.

On 3-26-15, Plaintiff talked with Unit Manager Ms.Monfils, regarding his fractured thumb and not being able to see a Doctor for well over 6 months and showed her how swollen his left hand had become and she immediately got on the phone and got plaintiff a scheduled appointment to be seen by a Doctor.

On 2-27-15, Plaintiff was called to HSU to be seen by Doctor Lisa Allen, who looked at the Plaintiff's hand and informed him that she was sending him to see a Bone Specialist; and that she was going to give plaintiff a No Work Restriction until the plaintiff could be cleared by the Orthopedic Surgeon.

On 2-28-15, Nurse Sharon Moerchen, arbitrarily contacted the Plaintiff's Job and told the Food Services Supervisor to hire someone else, because the Plaintiff is unable to work and from that point an time the Plaintiff was fired from his Job.

On 3-19-15, Plaintiff received in the mail an Offender Work Program placement DOC-1408 form that stated as of 3-1-15, Plaintiff was removed from his Job per HSU.

On 3-19-15, the Plaintiff found out that it was Nurse Sharon Moerdhen, who made the call to HSU to have him removed from his Job.

On 3-20-15, Nurse Moerchen wrote the Plaintiff in attempt to justify her arbitrary actions of having the Plaintiff fired from his jon, by claiming she did it because his Medical Classification had changed.

On 3-20-15, Plaintiff wrote HSU, for medical treatment.

On 3-21-15, Plaintiff wrote HSU about his medication and No work Order restriction Dr. Allen Ordered.
On 3    On 3-21-15, Nurse Klenke wrote plaintiff back

and informed him that he was given a No work Order by
Dr.Allen, until cleared by the Orthopedic Surgeon.

On 3-22-15, Plaitniff again wrote HSU about when he
was scheduled to see the Orthopedic Surgeon.

On 3-23-15, Nurse Sharon Moerchen, wrote the
Plaintiff back to inform him that HSU was working on his
appointment for the Orthopedic surgeon.

On 3-24-15, plaintiff wrote Nurse Moerchen requesting
to know how did the Dr.Allen's No work Lay-in change his medical
classification to cost him his job.

On 3-25-15, Nurse Moerchen wrote plaintiff back
stating that because Dr.Allen will review your restriction after
you are seen by the Orthopedic surgeon, because you complained
about having pain while working and see DOC 309.55.01 regarding
Medical Lay-in.

On 5-8-15, Plaintiff had a discussion with R.G.C.I.
Security Director - Steve Schueler, concerning his not receiving
pay while being placed on Medical Lay-in for a work related
injury, and for Food Services Staff and Security personnel not
submitting a Accident Report or incident Report about his injury
being work related; to which the Security Director said he never
knew anything about plaintiff being injuried and that the staff
were required to file a Accident Report and he would look into it.

On 5-10-15, plaintiff again requested a copy of the
Accident Report, from the Records office that was written by
Security Personnel or Food services staff, and was told that
Records office does not maintain Accident report and that the
Human Resource Department might have it.

On 5-12-15, Plaintiff received in the mail a copy
a Accident Report, that had been back dated by Food Services
Supervisor - Wanda Yeska.

On 5-12-15, plaintiff wrote ICE Michelle Smith
informing her that there was an alleged Accident Report written
showing that his injury was in fact a wrok related injury,
contrary to her decision in DOC Complaint No.#RGCI-2015-5822.

On 5-13-15, ICE - Michelle Smith wrote Plaintiff
back alleging that she was ware of the Accident Report.

On 5-16-15, Plaintiff submitted Appeal to Corrections
Complaint Examiner, (Hereinafter as "C.C.E.") regarding the
Warden,Security Director, ICE, Food Services Supervisor, Kitchen
Administrator, Human Resources, Health Care Dept., all
fabricating a Accident Report and Back dating it when the
Accident Report did not initially exist until after the Plaintiff
brought the situation concerning his injury to the Security
Director an told him no Accident Report was written.

On 5-16-15, Plaintiff was informed that he had been
scheduled for surgery.

On 5-29-15, Plaintiff again informed medical staff
that he was in intense pain and needed medical attention.
On 5-30-15, Plaintiff again requested medical attention for his
hand and requested something for the extreme pain he was in.

On 5-31-15, Plaintiff talked with Sgt.Roberts, who
called HSU concerning the plaintiff being in extreme pain and
HSU called plaintiff to HSU and provided him with something for
the pain.

On 6-1-15, Plaintiff informed Sgt.Murphy that he
needed medical attention; he picked up the phone and then put it
back down and told plaintiff that no one was at HSU and for the
Plaintiff to put in a medical request. The plaintiff filled out a
medical request. This occurred at 6:00 P.m.

On 6-2-15, Nurse A.Thompson informed plaintiff that a
appointment had been scheduled.

On 6-5-15, Plaintiff was seen by Nurse Moerchen, who
questioned the plaintiff about the plaintiff writing complaints
against her when she was only doing what she was told to do.

On 6-25-15, Plaintiff was seen by Nurse Practioner
regarding his scheduled surgery and during this visit nurse
practioner informed the plaintiff to take it easy and asked where
did he work and after plaintiff explained to nurse practioner that
after Dr.Allen gave the no work restriction until after he was
cleared by Orthopedic surgeon,that Nurse Moerchen had him fired
from his job; the nurse practioner informed plaintiff that he was
not suppose to loose his job, because his injury was wrok related

and she then called nurse Klenke into her office and asked her
who could she contact to talk about plaintiff loosing his job
because the Doctor did not say the plaintiff was suppose to loose
his job and that the Doctor simply stated that she did not wanted
plaintiff to go back to work until he was cleared by the
Orthopedic surgeon.

On 7-6-15, Plaintiff has surgery on his left thumb
TO fuse the MCP Joint.

On 7-7-15, Plaintiff was Prescribed 40 tablets of
Hydrocodone 50 mg. for his pains, inwhich he was required to take
2 tablets every 4 hours.

On 7-9-15, at approximately 12:40 p.m., plaintiff
was informed by nurse Moerchen that he was running out of his
medication because the Doctor only ordered 40 tablets and she
recommended that plaintiff take Ibuprofen.

On 7-10-15, Plaintiff was informed by nurse
Moerchen that she found 10 tablets, which had to last plaintiff
throughout the weekend and for him to take one tablet of
Hydrocodone for the 1st 4 hours and take one Ibuprofen for the
following 4 hours.

On 7-12-15, at 8:35 p.m., the plaintiff was
informed by HSU that his medication had completely run out.

On 7-13-15, plaintiff complained to staff
at 8:30 a.m., about his being in pain and for them to call HSU
and plaintiff filled out an medical request form.

ON 7-14-15, Plaintiff wrote HSU again requesting
medical attention and explained that the Ibuprofen made him real
sick.

On 7-15-15, Plaintiff found out that he was not
suppose to have taken any aspirin or Ibuprofen for 6 weeks after
his surgery.

On 7-17-15, Plaintiff filed a complaint against
nurse MOerchen for arbitrarily providing him with Ibuprofen when
she knew that plaintiff had just had surgery and that the Doctors
orders prohibited him from taking any Ibuprofen.

On 7-28-15, Plaintiff filed a complaint against

HSU about his prescribed medication.

On 7-21-15, Plaintiff went back to UW-Madison for a Post Surgery follow up and was informed that he'll see the Doctor again in 4 weeks.

On 7-22-15, Plaintiff received a No work Restriction in in the mail. However, plaintiff had already been fired on 3-1-15.

## Claims

That on 8-30-14, defendant's Wanda Yeska and C/O Hodge, acted with deliberate indifference to plaintiff's serious medical need, in violation of the Plaintiff's 8th Amendment rights against cruel and unusual punishment and 14th AMendment rights to substantial due process, wherein they failed to provide him with any medical treatment or seek any medical treatment for plaintiff's left hand that was injury while he was working;

That on 8-31-14, C/o Grover, and Sgt. Roberts acted with deliberate indifference to the plaintiff's serious medical needs, wherein they failed to provide the plaintiff with any medical care or treatment or seek medical care or treatment on the plaintiff's behalf, after plaintiff informed them both of the nature of his injury and showed them his left hand/thumb and demanded medical treatment and informed them it had been well over 8 hours that he had to endure extreme pain without any type of medical care or being seen by Medical Staff; to which the defendant's actions and inactions violated the plaintiff's 8th Amendment rights;

That on 9-5-14, defendant C.Barter, acted with deliberate indifference to the plaintiff's serious medical need, in violation of the 8th Amendment, wherein defendant C.Barter, without examining the plaintiff left hand or left thumb, and with plaintiff being seen by a Doctor, committed a medical Battery, by ordering the plaintiff to return the splinter issued for his left hand/thumb to HSU and remove said splinter against the plaintiff's objections, causing further injury to the plaintiff's left hand/thumb, that had not properly healed;

That on 9-26-14, defendant's Sharon Moerchen and C.Barter,
acted with deliberate indifference to the plaintiff's serious
medical needs, in violation of the plaintiff's 8th Amendment
rights; wherein they ordered the plaintiff to go back to work,
without the Plaintiff first being seen or examined by a Doctor,
when they knew of plaintiff's injured left hand/thumb and knew
that the plaintiff use of such left hand/thumb could cause
further injury to his left hand/thumb; and where they knew
plaintiff had continued to complain about being in extreme pain
and how swollen his left hand/thumb was;

That defendant's L.Doehling, Sharon Moerchen, C.Barter,
and Susan Peters, all acted with deliberate indifference to the
plaintiff's serious medical needs in violation of the plaintiff's
8th Amendment rights; wherein they failed to provide the
plaintiff with any medical treatment for 5 to 8 months, and kept
informing the plaintiff that he was scheduled to see the Doctor,
failed to provide an actual appointment with the Doctor until
several months later;

That on 2-16-15, defendant Sharon Moerchen, violated
the plaintiff's 8th Amendment rights, wherein she acted with
deliberate indifference to the plaintiff's serious medical need,
when she arbitrarily changed another nurse's prescribed medical
treatment for the plaintiff's injuried left hand/thumb; whereby
defendant Moerchen, cancelled plaintiff's pervious issued No Work
Restriction issued by Nurse Betty and ordered the Plaintiff to
go back to work on 2-17-15, depsite the plaintiff had not been
seen by a Doctor and where the defendant herself had not examined
the plaintiff's left hand/thumb nor discuss with the plaintiff
whether his left hand/thumb had healed enough for him to proceed
back to work;

That defendant Moerchen, violated the plaintiff's 1st
on 2-28-15, wherein she arbitrarily called the plaintiff's job
and had him fired, in retaliation for the plaintiff complaints
made against her, when she knew it was not Dr. Allen, intent for
the plaintiff to be fired from his job, but to simply be placed

on medical lay-in until he could be seen by the Orthopedic
surgeon an cleared to return to work; and which she knew was
contrary to DAI Policy # 309.55.01 section# C,,WHICH allows
medical Lay-in and allows a inmate to be placed in sick cell
status as a result of a job related injury and continue to
be compensated at the rate earned in their previous status;
and work related injuries reported on a DOC - 98A form shall
not affect pay status, which defendant Moerchen knew or should
have been aware of;

        That on 7-9-15, defendant Moerchen, acted with
deliberate indifference to the plaintiff's serious medical need,
whereby the plaintiff went to HSU, to take his normal  prescribed
2 Norco tablets, that were prescribed by the Medical Doctor,
Lulka, at the UW-Hospital in Madison,Wisconsin,on 7-6-15; which
Plaintiff was suppose to take 2 Norco tablets every 4 hours,
beginning on 7-7-15, to which the plaintiff only took 8 out of
daily 12 Norco tablets, that were issuesd on 7-7-15; and on
7-8-15, the plaintiff took only 10 out of the daily issued 12
Norco tablets; and then on 7-9-15, when the plaintiff went to Hu
HSU, nirse Moerchen told plaintiff that there was no more Nórco
Tablets for him,to which the plaintiff objectibely requested his
Norco daily 2 per XXX every 4 hours tablets from nusse Moerchen
as the Plaintiff informed nurse Moerchen that Dr.Lulka, issued a
total of 40 Norco tablets for him, and that it is impossible for
the 40 Norco tablets to have complete run out in two days, as the
plaintiff was only allowed to take 2 every 4 hours, and he began
taking them on 7-7-15; and had only taken 8 tablets on 7-7-15,
as he missed HSU medical call twice on 7-7-15, and he only took
a total of 10 Norco tablets on 7-8-15, as he again missed 1
medical HSU call session; which would been a total of 18 Norco
tablets taken between 7-7-15, & 7-8-15, leaving a total of 22
Norco tablets prescribed by Dr.Lulka, unaccounted for and

 even if plaintiff had been given the total doses of 2 every 4
hours as prescribed by Dr.Lulka, between 7-7-15 and 7-8-15, it
still would have only came to a total of 24 tablets being taken
and leaving 16 Norco tablets unanswered for which would have
required defendant Moerchan to provide the plaintiff with his

daily 2 Norco tablets, every 4 hours for 7-9-15, which defendant Moerchen refused to provide the plaintiff his prescribed Norco tablets as order by Dr.Lulka, in violation of the plaintiff's 8th Amendment rights, wherein no matter what the 40 tablets of Norco would not have completely run out until 7-10-15; and plaintiff was left to go without his medication by the defendant and Plaintiff submitted his DOC Complaint# RGCI-2015-12947, against HSU staff;

That on 7-9-15, defendant Moerchen, acted with deliberate indifference to the plaintiff's serious medical need, wherein she further refused to provide the plaintiff with the Naproxen tablets that was prescribed for him, which did not expire or was not discontinued until 7-10-15;

That defendant Moerchen, acted with deliberate indifference to the plaintiff's serious medical need, when she arbitrarily provided the plaintiff with Ibuprofen tablets contrary to the Medical Doctor's/Surgeon Orders and the UW-Health Hospital Health facts sheet, page# 2, that prohibited the plaintiff from taking any aspirin or anti-infammatory medications for 6 weeks, without checking with plaintiff's doctor; causing the plaintiff to become sick; in violation of the plaintiff's 8th Amendment rights;

That the defendant Moerchen, further acted with deliberate indifference to the plaintiff's serious medical need, wherein she arbitrarily called an on-call provider order, instead of checking with the defendant's doctor/surgeon as to whether the it was appropriate for her to provide the plaintiff with Ibuprofen within only a few days after his surgery, and failing to inform the on-call order provider with the facts that the plaintiff had in fact had surgery on 7-6-15, and was ordered not to take any aspirin or anti-inflammatory medications for 6 weeks; in violation of the plaintiff's 8th Amendment; in which plaintiff further believe's was in retaliation for his having filed complaints against defendant Moerchen, in violation of his 1st Amendment rights;

That defendant Brian Miller, acted with deliberate indifference to the Plaintiff serious medical needs where

Plaintiff informed defendant of how his left hand was injuried while plaintiff was at work and was sent back to the unit without any medical treatment and plaintiff showed defendant how swollen his left hand and thumb was and that he was in great pain and defendant did nothing to get the plaintiff any medical treatment and the defendant informed the plaintiff to file a inmate complaint through the ICRS and see how things work out, in violation of the plaintiff's 8th Amendment rights against cruel & unusual punishment;

That defendant Susan Peters acted with deliberate indifference to the plaintiff's serious medical needs, in violation plaintiff's 8th Amendment rights, when she ordered the plaintiff to go back to work without examining the plaintiff's left hand to see if the plaintiff was capable of returning back to work at that time and while knowing that the plaintiff had not been seen by a doctor to assess the plaintiff's injuries to his left hand and while knowing that the plaintiff had constantly complained of being in extreme pain due to his injury in left hand;

That defendant Wanda Yeska and C/o Hodge violated the plaintiff's 14th Amendment right to due process, wherein they failed to submit a written Incident or Accident Report, on 8-30-14, documenting the plaintiff's injury to his left hand & thumb that he received while working, causing the plaintiff not to continue being compensated at the earned rate in his previous work status, contrary to DAI Policy 309.55.01;

That defendant Wanda Yeska, violated the plaintiff's 14th Amendment right to due process and equal protection under the law and the plaintiff 1st amendment right against retaliation for his complain against her to her Supervisor about her not submitting a Accident report regarding his work related injury; wherein On or around 2-15-15, the plaintiff was informed by Kitchen Administrator - Amy Wilson, that the reason he was not receiving pay, was because no Accident report had been made indicating that he was injuried while working; Plaintiff informed defendant Amy Wilson that a report should have been made by defendant Yeska and

C/o Hodge, who he informed/showed his injury to; and defendant
Wilson then called defendant C/o Hodge in her office an asked
whether he infact filed a Accident work concerning the plaintiffs
injury to his left hand and he informed defendant Wilson that he
did not and thereafter, defendant Wilson called defendant Yeska
into her office while Plaintiff was present and asked her whether
she filed a Accident Report concerning the plaintiff's injury to
left hand and defendant Yeska, informed her that she had not
written a Accident Report on the incident;

That on 5-12-15, several months after complaining to
several defendant's about not receiving his work pay and after
discussing that matter with defendant Steve Schueler, who
confirmed that a Accident report had to be written, plaintiff
a Accident Report, back dated to 8-30-14, with the defendant's
Wanda Yeska, signature on it. Clearly, showing her deliberate and
malice intent to fabricate a Accident Report, in attempt to cover
up her actions of not;

That, defendant Amy Wilson, violated the plaintiff's 14th
Amendment rights to due process and Equal Protection, and 1st
Amendment rights against retaliation, when she on or around
2-15-15, informed Plaintiff that the reason he was not receiving
continued work pay, was because there was no Accident Report
written concerning his work related injury to his left hand; and
after personnally talking with defendant's C/o Hodge and Yeska
while in the present of Plaintiff concerning whether they in fact
had written a Accident Report on the plaintiff's injury to left
hand; which the confirmed that they had not.

And after plaintiff had complained to several R.G.C.I.
Officials and filed an Inmate Complaint about no Accident Report
being written, that defendant Amy Wilson, arbitrary and
maliciously, falsely signed her name upon a back dated Accident
Report, signed on 8-30-14; which defendant was not at work at the
date and time of incident on second shift on 8-30-14, and could
not have signed the alleged Accident Report on 8-30-14, and
defendant Wilson never interview inmate on 8-30-14, as falsely
indicated in the fabricated Accident Report;

That on 9-2-14, defendant Steve Schueler, violated the
plaintiff's 1st, 8th, and 14th Amendment rights against,
retaliation, cruel and unuaual punishment, Due Process and Equal
Protection under the law, Wherein the defendant Schueler,
arbitrarily and maliciously, conspired with other defendants to
sign and back date a Accident Report, concerning the plaintiff's
work related injury after the plaintiff had complained about not
being continuely paid for his work related injury and filed
inmate complaint#RGCI-2015-9010, around 5-18-15, for staff not
writting a Accident Report concerning his work related injuries;
That defendant Schueler, with malice intent, arbitrarily signed
and back dated Accident Report, he knew to be false, wherein
plaintiff on 5-8-15, had a discussion with defendant Schueler,
oncerning his work related injury and not being compensated
therefor; which defendant Schueler, informed plaintiff that he
had no knowledge of the fact that plaintiff had been injuried
while working at R.G.C.I.; Yet, on 5-12-15, days after discussion
with defendant Schueler, the plaintiff received in the mail a
copy of an Accident Report with the defendant Schueler's
signature affixed to it;

That on 9-11-14, the defendant Michael Meisner,
violated the plaintiff's 1st. 8th. and 14th Amendment rights
against retaliation, cruel and unusual punishment, Due process &
Equal Protection under the law, wherein defendant conspired with
defendant's Yeska, Wilson, Schueler and Other R.G.C.I. Officials
to sign and back date fabricated Accident Report concerning the
plaintiff's work related 8-30-14, injuries to his left hand and
thumb, after the plaintiff had filed complaints against defendants
for failing to write a Accident Report or compensate him for his
work related injuries;

That on 4-6-15, defendant Michelle Smith, violated the
plaintiff's 8th and 14th Amendment right against cruel and
Unusual punishment, Due process and Equal Protection under the
law, where by the defendant in her capacity as ICE, falsey
alleged that there was no documentation to support plaintiff's
claim that he is unable to work due a work related injury that

occurred on 8-31-14, and that there is no requirement to continue
to compensate plaintiff at his previous rate of earning; when to
the contrary defendant Smith, in a interview/information request
response to plaintiff admitted that she was aware of a Accident
Report completed by staff showing that my injury was work related;
Yet she made no mention of it in her decision/Recommendation as
document relied upon or viewed nor does she mention DOC-3639
Nursing Encounter Protocols signed and filled out on 8-31-14,
which verifys that plaintiff was sent to HSU by request of
Kitchen staff and that I was not charge a Medical Co-pay as
injury was work related; further defendant Smith falsely stated
that there was no requirement for plaintiff to continue to be
compensated at his previous rate of earning given these
circumstances; when defendant Smith knew this is contrary to DAI
Policy 309.55.01 at page# 5, section#C, Lay in and Sick cell
Status, that clearly, requires a inmate to continue to receive
compensation at the rate earned in their previouswork status for
injuries sustained in a facility Job related accident and which
mandates that work related injuries reported on DOC-98A shall not
affect pay status; which defendant knew doctor had in fact placed
plaintiff in a No work medical lay in status due to his injuries
he sustained to left hand and thumb while at Work at R.G.C.I.;

That on or around 3-5-15, & 3-24-15, the defendant Kraimer,
continued to violate plaintiff's 1st, 8th and 14th Amendment
right, against retaliation,cruel and unusual punishment, due
process, when he failed to continue to compensate plaintiff at
rate earned in plaintiff's previous work status, wherein
defendant kraimer knew that defendant had in fact sustained an
work related injury while working at R.G.C.I. Kitchen, and was
entitled to such continued compensation pursuant to DAI Policy
309.55.01, section#C at page#5;

That on 9-2-14, defendant K.Souzek, violated the
plaintiff's 1st, 8th, and 14th Amendment rights against
retaliation, cruel and unusual punishment, Due Process and Equal
Protection under the law, wherein defendant arbitrarily and
maliciously signed and back dated ACcident Report, she knew to be

false, in attempt to cover up violations made by other co-defendant's; whom the plaintiff had filed complaints against for failing to write Accident Report concerning his work related injury and failing to compensate plaintiff for his job;

That the defendant's actions and inactions herein described were outrageous, intentional and malicious.

That the defendant Michael Mesiner, pursuant to § 19.01 (3) Wis. Stats., while acting in said capacity of Warden is responsible and liable for the actions and inactions of his employee's via Official Oath and Bond of Office, for the injuries sustained herein;

## Relief

Wherefore, the plaintiff prays for judgment against the defendant's individually and jointly and demands the following relief:

A. Compensatory Damages in the amount of $395,000.00;

B. Punitive Damages in the Amount of 10,000.00; and 200 times the amount deem by the Court pursuant the mandate of Maslip Cleopatra, et. al.-vs-Pacific Mutual Life Ins. Co., 499 U.S. 1, 113 F. 2d. 111 Sec. 1032 (No.89-1279);

C. All costs, disbursements associated with this action;

F. Any and all further relief that the Court deems fit to impose under the circumstances.

Dated 10th day of Oct ,2015

Respectfully Submitted
Without Prejudice

Robert E Basta

Redgranite, WI.